IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ISSACHAR TIMOTHY MEAFOU, #A6005734,<br><br>               Plaintiff,<br><br>     vs.<br><br>STATE OF HAWAII, et al.,<br><br>              Defendants. | CIVIL NO. 25-00460 DKW-WRP<br><br>ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND |

Before the Court is pro se Plaintiff Issachar Meafou's Prisoner Civil Rights Complaint brought pursuant to 42 U.S.C. § 1983.[1]  ECF No. 1.  In the Complaint, Meafou alleges that the State of Hawaii, Oahu Community Correctional Center (OCCC), and ten prison officials violated his rights by using excessive force (Count I), retaliating against him (Count II), threatening his safety (Counts III and V), sexually harassing him (Count IV), denying him of his property (Count VI), and denying him adequate medical care (Count VII).[2]  *Id.* at PageID.7-13.  After

---

[1]Meafou is currently incarcerated at Oahu Community Correctional Center.  *See* VINE, https://vinelink.vineapps.com/search/HI/Person (select "ID Number"; enter "A6005734"; and select "Search") (last visited Dec. 22, 2025).

[2]Meafou names as defendants: (1) the State of Hawaii; (2) OCCC; (3) Warden John Schell; (4) Adult Corrections Officer (ACO) Jeff Tai; (5) Registered Nurse Matt Huber; (6) ACO Kainoa Mallot; (7) Sergeant (Sgt.) Darryl Pili; (8) Sgt. Levi Kaakau; (9) Sgt. Larry Domingo; (10) Deputy Warden Lance Rabacal; (11) Case Manager Chad Kahale; and (12) Lieutenant (Lt.)

conducting the screening required by 28 U.S.C. § 1915A, the Court DISMISSES the Complaint with partial leave to amend. If Meafou wants to proceed, he must file an amended pleading that cures the noted deficiencies in his claims on or before **January 20, 2026**. Alternatively, instead of filing an amended pleading, Meafou may inform the Court in writing on or before **January 20, 2026** that he would like to voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a "strike" under 28 U.S.C. § 1915(g).[3]

## I.    BACKGROUND[4]

On December 28, 2024, Meafou was incarcerated at Halawa Correctional Facility when he was "attacked" by members of a security threat group (STG)[5] known as the "USO Family." ECF No. 1 at PageID.11. After being "mobbed and beaten," Meafou went to the hospital. *Id.* Around the same time, Meafou was threatened by members of another STG called "Westsiders and Murder." *Id.*

---

Torres. ECF No. 1 at PageID.1-4. Meafou names all the prison officials in both their individual and official capacities. *Id.*

[3]In general, 28 U.S.C. § 1915(g) prohibits a prisoner from filing a civil action in forma pauperis if he or she has on three or more occasions brought an action in federal court that was dismissed as frivolous or malicious, or for failing to state a claim upon which relief may be granted.

[4]The Complaint alleges the following facts, which the Court accepts as true for the purposes of screening. *See Nordstrom v. Ryan*, 762 F.3d 903, 906 (9th Cir. 2014).

[5]The term "STG" is used to designate some formal and informal prison groups—for example, prison gangs. *See DePaepe v. White*, 2020 WL 3472907, at *2 n.3 (D. Haw. June 24, 2020).

On May 16, 2025, Meafou was assigned to cell 204 in housing module 19 at OCCC. *Id.* at PageID.9. Meafou lived alone in the cell until another inmate, Jordan Aukai, joined him. *Id.* Aukai had a "different classification" than Meafou and was a known STG member. *Id.*

On May 22, 2025, Aukai "attacked" Meafou in cell 204 while Meafou was eating lunch and talking on a tablet with his wife. *Id.* at PageID.7. During the incident, Aukai "stabbed" Meafou in the head. *Id.* at PageID.9. According to Meafou, he was left with "a puncture in [his] left temple area, in between [his] eyes[,] and cuts on [his] head and arms." *Id.*

While Aukai was choking Meafou, ACO Tai responded and pointed a can of mace at Meafou. *Id*. at PageID.7. ACO Tai then handcuffed Meafou's hands behind his back and "shoved" him toward the medical unit. *Id.* ACO Mallot, Sgt. Kaakau, Sgt. Pili, Sgt. Domingo, and Deputy Warden Rabacal witnessed ACO Tai "shove" Meafou. *Id.* According to Meafou, his handcuffs were "tight and twisted". *Id.* As ACO Tai walked with Meafou, he repeatedly announced, "sanctioned hit." *Id.*

Upon arriving at the medical unit, Nurse Huber "failed to check the stab wounds on [Meafou's] palm and hands." *Id.* at PageID.13. After Meafou told "them" that he had been stabbed and wanted to be examined at the hospital, a nurse told Meafou, "it's just a scratch." *Id.* During the ensuing weeks, Meafou's shin

3

swelled, and his palms were numb.  *Id.*  When Meafou visited the medical unit for a follow-up appointment on an unspecified date, Nurse Huber "denied medical attention."  *Id.*

Sometime on May 22, Case Manager Kahale told Meafou, "it was a green light," and asked Meafou, "did you do anything at a gameroom," and "did you rat." *Id.* at PageID.8.  After the incident, Case Manager Kahale suggested that Meafou not be placed in protective custody, and that he instead be moved to housing module 2.  *Id.*  Meafou eventually moved into housing module 2, which ACO Tai referred to as "[his] module."  *Id.* at PageID.8.  ACO Tai then "harass[ed]" Meafou in unspecified ways over the course of "weeks."  *Id.*  While he was housed in housing module 2, Meafou asked for "court papers" that he had in housing module 19.  *Id.* at PageID.12.  Sgt. Pili and ACO Tai did not retrieve the papers.  *Id.*

On September 9, 2025, Meafou attempted "to explain things" to Sgt. Larry Domingo, but Sgt. Domingo "brushed [him] off."  *Id.* at PageID.11.  According to Meafou, prison officials continue to house him with members of STGs.  *Id.*

Finally, on an unspecified date, Meafou was urinating with the lights off when ACO Handle (who is not named as a defendant) directed his flashlight's beam toward Meafou's groin.  *Id.* at PageID.10.  Meafou asked ACO Handle to stop, but he did not.  *Id.*  In the days that followed, Meafou was harassed and subjected to "sexual insults" by unnamed medical staff.  *Id.*

Meafou commenced this lawsuit by signing the Complaint that the Court received on October 27, 2025. *Id.* In the Complaint, Meafou alleges that the State of Hawaii, OCCC, and ten prison officials violated his rights by using excessive force (Count I), retaliating against him (Count II), threatening his safety (Counts III and V), sexually harassing him (Count IV), denying him of his property (Count VI), and denying him adequate medical care (Count VII). *Id.* at PageID.7-13. Meafou seeks a "prisoner release order," damages, and a declaratory judgment.[6] *Id.* at PageID.14. Meafou paid the required fees associated with this lawsuit on December 15, 2025. ECF No. 6.

## II.    STATUTORY SCREENING

The Court is required to screen all prisoner pleadings against government officials pursuant to 28 U.S.C. § 1915A(a). *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

---

[6]To the extent Meafou seeks release from custody, such relief is unavailable in a civil rights lawsuit. *See Preiser v. Rodriguez*, 411 U.S. 475, 479 (1973); *see also Grandinetti v. Macadamia*, 2019 WL 6499090, at *2 (D. Haw. Dec. 3, 2019) ("[Plaintiff] may not pursue an order directing his release from custody through a § 1983 action.").

5

Screening under 28 U.S.C. § 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6).  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d at 1130.  When a claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## III.  <u>DISCUSSION</u>

### A.    Legal Framework for Claims under 42 U.S.C. § 1983

"Section 1983 provides a cause of action against '[e]very person who, under color of' law deprives another of 'rights, privileges, or immunities secured by the Constitution.'"  *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (quoting 42 U.S.C. § 1983) (alteration in original).  To state a claim under 42 U.S.C. §1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

### B.    Eleventh Amendment

Meafou names as defendants the State of Hawaii, OCCC, and ten prison officials in both their official and individual capacities.  *See* ECF No. 1 at PageID.1-4.

As a threshold matter, neither the State of Hawaii nor OCCC is a "person" for purposes of 42 U.S.C. § 1983.  *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997) ("We have held . . . that § 1983 actions do not lie against a State."); *Howlett v. Rose*, 496 U.S. 356, 365 (1990) ("[T]he State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not

subject to suit under § 1983 in either federal court or state court."). Thus, any claims against the State of Hawaii and OCCC must be dismissed.

Relatedly, "[t]he Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-03 (1984). It is well settled that "Hawaii has not unequivocally waived its sovereign immunity," *Thompson v. Paleka*, 2017 WL 5309608, at *4 (D. Haw. Nov. 13, 2017); and Congress has not overridden that immunity for civil rights actions brought pursuant to 42 U.S.C. § 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Thus, any claims against the State of Hawaii are also barred by the Eleventh Amendment. *See Neal v. Shimoda*, 131 F.3d 818, 832 n.17 (9th Cir. 1997) ("We . . . agree with the district court that the State of Hawaii is entitled to the protections of sovereign immunity under the Eleventh Amendment." (citation omitted)). Any claims against OCCC are likewise barred by the Eleventh Amendment. *See Rowan v. Dep't of Pub. Safety O.C.C.C.*, 2019 WL 637764, at *2 (D. Haw. Feb. 14, 2019) ("Neither the Hawaii Department of Public Safety (DPS) . . . nor OCCC, a jail, are . . . subject to suit under the Eleventh Amendment."). The Eleventh Amendment also bars any claims for money damages against the individual prison officials in their official capacities. *See*

*Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) ("The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity.").

All claims against the State of Hawaii and OCCC, and Meafou's claims for money damages against the ten named prison officials in their official capacities are barred by the Eleventh Amendment and DISMISSED with prejudice.  The Eleventh Amendment does not bar Meafou's claims for injunctive relief against the prison officials in their official capacities, to the extent there is an ongoing violation of federal law.  *See Wolfson v. Brammer*, 616 F.3d 1045, 1065-66 (9th Cir. 2010); *see also Will*, 491 U.S. at 71 n.10.  Nor does it bar suits for damages against state officials in their personal capacities.  *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).  Before any of such claims can proceed, however, Meafou must address the following issues.

## C.    Joinder

Meafou's various claims are based on an incident that occurred at HCF in December 2024, ECF No. 1 at PageID.11, events surrounding an incident at OCCC in May 2025, *id.* at PageID.7-9, 12-13, and another incident at OCCC that occurred on an unspecified date, *id.* at PageID.10.  Meafou names ten prison officials as defendants.  *Id.* at PageID.1-4.

When a single defendant is named in a lawsuit, a party may bring as many claims as it has against that defendant. Fed. R. Civ. P. 18(a). "To name different defendants in the same lawsuit, however, a plaintiff must satisfy Rule 20, governing joinder of parties." *Weeks v. Espinda*, 2010 WL 2218631, at *3 (D. Haw. June 2, 2010). Rule 20(a)(2) allows multiple defendants to be joined in one action only if (1) any right to relief is asserted against them jointly, severally, or with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a)(2)(A), (B). "Unrelated claims involving different defendants belong in different suits." *What v. Honolulu Police Dep't*, 2014 WL 176610, at *4 (D. Haw. Jan. 13, 2014).

If Meafou decides to file an amended complaint, he should make clear the connection, if any, between his different claims. Meafou may state several claims against a single defendant. Fed. R. Civ. P. 18. He may also add any additional claims against other defendants, if those claims arise from the same transaction, occurrence, or series of transactions as his original claim. Fed. R. Civ. P. 20(a)(2). Meafou may not pursue a combination of unrelated claims in a single suit. *See Char v. Kaiser Hosp.*, 2019 WL 80890, at *3 (D. Haw. Jan. 2, 2019) ("Unrelated claims involving different defendants must be brought in separate actions."). Any attempt to join claims that are not permitted by the Federal Rules of Civil

10

Procedure will result in those claims being dismissed as improperly joined. In deciding which claims, if any, he wants to pursue, Meafou must consider the following legal standards.

## D.    Excessive Force

Meafou alleges in Count I that ACO Tai used excessive force on May 22, 2025, and that ACO Mallot, Sgt. Kaakau, Sgt. Pili, Sgt. Domingo, and Deputy Warden saw ACO Tai shove him while he was handcuffed and did nothing about it. ECF No. 1 at PageID.7. Meafou does not say, however, if he was a pretrial detainee or a convicted inmate at the time of the incident.

If Meafou was a pretrial detainee, his excessive force claim is analyzed under the Fourteenth Amendment's Due Process Clause. As the Supreme Court has stated, "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Under this standard, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97. Relevant considerations include the relationship between the need for the use of force and the amount of force used, the extent of plaintiff's injury, any effort made by the officer to temper or limit the amount of force, the severity of the security problem at issue, the threat reasonably perceived by the officer, and whether the plaintiff was actively resisting. *Id.* at 397.

11

If Meafou was a convicted inmate at the time of the incident, his excessive force claim is analyzed under the Eighth Amendment.  "In excessive force cases brought under the Eighth Amendment, the relevant inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Hughes v. Rodriguez*, 31 F.4th 1211, 1221 (9th Cir. 2022) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).  The Ninth Circuit has identified the following five factors to consider when determining whether a use of force was malicious and sadistic: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Furnace v. Sullivan*, 705 F.3d 1021, 1028-29 (9th Cir. 2013) (internal quotation marks and citation omitted).

## E.    Retaliation

Meafou alleges in Count II that ACO Tai, Warden Schell, and Case Manager Kahale retaliated against him.  ECF No. 1 at PageID.8.

"[A] prisoner can make a viable claim of First Amendment retaliation by alleging five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights,

12

and (5) the action did not reasonably advance a legitimate correctional goal."

*Chavez v. Robinson*, 12 F.4th 978, 1001 (9th Cir. 2021) (quotation marks and

citation omitted).

At this point, Meafou has not plausibly alleged that he engaged in any

protected conduct, let alone that any defendant took an adverse action against him

because of that conduct.

## F.    Threat to Safety

Meafou alleges in Counts III and V that Sgt. Kaakau, Warden Schell, and

Sgt. Domingo threatened his safety by housing him with members of STGs.

ECF No. 1 at PageID.9, 11.  Again, Meafou does not say if he was a pretrial

detainee or a convicted inmate when the alleged events occurred.

If Meafou was a pretrial detainee, then his threat-to-safety claim "arise[s]

under the Fourteenth Amendment's Due Process Clause, rather than under the

Eighth Amendment's Cruel and Unusual Punishment Clause."  *Gordon v. County*

*of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) (internal quotation marks and

citation omitted).  To establish a threat-to-safety claim under the Fourteenth

Amendment, the plaintiff must show that:

> (1) [t]he defendant made an intentional decision with respect to the
> conditions under which the plaintiff was confined; (2) [t]hose
> conditions put the plaintiff at substantial risk of suffering serious
> harm; (3) [t]he defendant did not take reasonable available measures
> to abate that risk, even though a reasonable officer in the

13

circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) [b]y not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (formatting and footnoted omitted).

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* (internal quotation marks, brackets, and citations omitted).  A pretrial detainee who asserts a threat-to-safety claim must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

If Meafou was already convicted at the time the relevant events occurred , then the Eighth Amendment applies.  *See Norbert v. City & County of San Francisco*, 10 F.4th 918, 927 (9th Cir. 2021) ("For [a plaintiff] who is convicted and awaiting sentencing, the Eighth Amendment supplies the relevant standard."). The Eighth Amendment imposes on prison officials a duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks and citation omitted).  A prison official violates the Eighth Amendment, however, only when two requirements are met.  "First, the deprivation must be objectively, sufficiently serious[.]" *Id.* at 834.  "For a

claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* Second, the plaintiff must show deliberate indifference—that is, that "the [prison] official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

## G.    Sexual Harassment

Meafou alleges in Count IV that ACO Handle (who is not named as a defendant) and Warden Schell violated his rights by subjecting him to sexual harassment.[7]  ECF No. 1 at PageID.10.  Again, if he decides to proceed with these claims, Meafou must specify if he was a pretrial detainee or a convicted inmate when the complained-of conduct occurred.

To the extent Meafou was a pretrial detainee, most cases that involve unwanted sexual harassment by public officials have been analyzed under the substantive due process right to be free from violations of bodily integrity under the Fourteenth Amendment.  *Vazquez v. County of Kern*, 949 F.3d 1153, 1162 (9th

---

[7]To the extent Meafou seeks to assert claims directly under the Prison Rape Elimination Act, *see* ECF No. 1 at PageID.10, he many not do so.  *See Hatcher v. Harrington*, 2015 WL 474313, at *4 (D. Haw. Feb. 5, 2015) ("Nothing in the PREA explicitly or implicitly suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act.");  *Collen v. Yamaoka*, 2015 WL 793085, at *2-4 (D. Haw. Feb. 25, 2015) (same).

Cir. 2020).  In conducting this analysis, courts apply the "shocks the conscience test."  *Id.*  Under this test, the threshold question is whether the behavior of the public official is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Id.* (internal quotation marks omitted).

If Meafou was a convicted inmate, the Eighth Amendment applies.  *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012).  Under the Eighth Amendment, "courts consider whether the officials acted with a sufficiently culpable state of mind and if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."  *Id.* (cleaned up).  Meafou must keep in mind, however, that the "Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment."  *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

## H.    Deprivation of Property

Meafou alleges in Count VI that Sgt. Pili and ACO Tai did not retrieve and provide him with his "court papers."  ECF No. 1 at PageID.12.

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV, § 1.  Neither negligent nor "unauthorized intentional deprivation[s] of property by a state employee . . . constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a

meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

To the extent Meafou is suggesting that Sgt. Pili and ACO Tai destroyed or otherwise denied him of property, Hawaii law provides an adequate post-deprivation remedy for the loss of property. *See* Haw. Rev. Stat. § 663-1; *Finefeuiaki v. Maui Police Dep't*, 2018 WL 4839001, at *6 (D. Haw. Oct. 4, 2018); *see also Lagmay v. Nobriga*, 2016 WL 4975198, at *6 (D. Haw. Sept. 16, 2016) ("Hawaii's civil tort claim process provides an adequate post-deprivation remedy.").

## I.    Medical Care

Meafou alleges in Count VII that Nurse Huber denied him adequate medical care immediately after the incident on May 22, 2025, and later refused medical care on an unspecified date. ECF No. 1 at PageID.13. Again, Meafou does not say whether he was a pretrial detainee or a convicted inmate when his rights were allegedly violated.

Medical care claims brought by pretrial detainees arise under the Fourteenth Amendment's Due Process Clause. *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018). "[C]laims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth

17

Amendment must be evaluated under an objective deliberate indifference standard." *Id.* at 1124–25.

A pretrial detainee asserting a failure-to-provide-adequate-medical-care claim must show that: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Id.* at 1125.

Regarding the third element, "the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[ ] on the facts and circumstances of each particular case." *Id.* (quotation marks and citation omitted) (alteration in original). The "mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment"; the plaintiff must "prove more than negligence but less than subjective intent— something akin to reckless disregard." *Id.* (internal quotation marks and citation omitted).

To establish a claim of inadequate medical care, a convicted prisoner must show both a "serious medical need" and that an official's response to the need was "deliberately indifferent." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785-86 (9th Cir. 2019) (per curiam).

A serious medical need is present when, for example, the "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* at 785 (internal quotation marks and citations omitted). "Serious medical needs can relate to physical, dental and mental health." *Id.* (internal quotation marks and citations omitted).

"To show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* at 786 (internal quotation marks and citations omitted) (alterations in original). This is a "high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "An inadvertent or negligent failure to provide adequate medical care is insufficient to establish a claim under the Eighth Amendment." *Edmo*, 935 F.3d at 786 (citation omitted). "In other words, [m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* (internal quotation marks and citation omitted) (alteration in original).

J.    **Supervisory Liability**

Meafou names as a defendant the warden of OCCC.  ECF No. 1 at

PageID.1.

There is no *respondeat superior* liability under 42 U.S.C. § 1983.  *Vazquez*

*v. County of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020).  "Because vicarious

liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has

violated the Constitution."  *Iqbal*, 556 U.S. at 676.   "A supervisory official may be

held liable under § 1983 only if there exists either (1) his or her personal

involvement in the constitutional deprivation, or (2) a sufficient causal connection

between the supervisor's wrongful conduct and the constitutional violation."

*Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018) (internal quotation marks

and citations omitted).   "The requisite causal connection can be established by

setting in motion a series of acts by others, or by knowingly refusing to terminate a

series of acts by others, which the supervisor knew or reasonably should have

known would cause others to inflict a constitutional injury."  *Felarca v. Birgeneau*,

891 F.3d 809, 820 (9th Cir. 2018) (internal quotation marks and citations omitted).

"Thus, a supervisor may be liable in his individual capacity for his own

culpable action or inaction in the training, supervision, or control of his

subordinates; for his acquiescence in the constitutional deprivation; or for conduct

that showed a reckless or callous indifference to the rights of others." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (internal quotation marks and citation omitted). A "claim that a supervisory official knew of unconstitutional conditions and culpable actions of his subordinates but failed to act amounts to acquiescence in the unconstitutional conduct of his subordinates and is sufficient to state a claim of supervisory liability." *Keates*, 883 F.3d at 1243 (internal quotation marks and citation omitted).

At this point, Meafou has not plausibly alleged how Warden Schell violated his rights. Warden Schell's supervisory position at OCCC, without more, is not enough to state a claim against him.

## IV.    <u>LEAVE TO AMEND</u>

The Complaint, ECF No. 1, is DISMISSED with partial leave to amend. Meafou must file any amended pleading on or before **January 20, 2026**. Meafou may not expand his claims beyond those already alleged herein or add new claims, such as those against individual corrections officers, without explaining how those new claims relate to the claims alleged in the Complaint. Claims that do not properly relate to those in the Complaint are subject to dismissal.

Meafou must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii. Local Rule 10.4 requires that an amended complaint be complete in itself, without reference to any prior pleading. An

amended complaint must be short and plain, comply with Rule 8 of the Federal

Rules of Civil Procedure, and be submitted on the Court's prisoner civil rights

form. *See* LR99.2(a).  An amended complaint will supersede the preceding

complaint. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th

Cir. 2015).  Defendants not renamed and claims not realleged in an amended

complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa County*,

693 F.3d 896, 928 (9th Cir. 2012).

## V.    28 U.S.C. § 1915(g)

If Meafou fails to file an amended complaint or is unable to amend his

claims to cure their deficiencies, this dismissal may count as a "strike" under

28 U.S.C. §1915(g).  Under this "3-strikes" provision, a prisoner may not bring a

civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or
> detained in any facility, brought an action or appeal in a court of the
> United States that was dismissed on the grounds that it is frivolous,
> malicious, or fails to state a claim upon which relief may be granted,
> unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.    **CONCLUSION**

(1) The Court DISMISSES with prejudice all of Meafou's claims against the State of Hawaii and OCCC, and his claims for money damages against the individual defendants in their official capacities.  These may not be reasserted.

(2) If Meafou wants any of his other claims to proceed, he must file an amended pleading that cures the noted deficiencies in those claims on or before **January 20, 2026**.

(3) ALTERNATIVELY, instead of filing an amended pleading, Meafou may inform the Court in writing on or before **January 20, 2026**, that he would like to voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a "strike" under 28 U.S.C. § 1915(g).

(4) Failure to comply with these deadlines may result in AUTOMATIC DISMISSAL of this suit without further notice, and Meafou may incur a strike under 28 U.S.C. § 1915(g).

//

//

//

//

//

23

(5) The Clerk is DIRECTED to send Meafou a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED: December 23, 2025 at Honolulu, Hawai‘i.



Derrick K. Watson
Chief United States District Judge

---

*Issachar Timothy Meafou v. State of Hawaii, et al.*; Civil No. 25-00460
DKW-WRP; **ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND**