IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ISSACHAR TIMOTHY MEAFOU, #A6005734,<br><br>    Plaintiff,<br><br>vs.<br><br>STATE OF HAWAII, *et al*.,<br><br>    Defendants. | CIVIL NO. 25-00460 DKW-WRP<br><br>ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |

Before the Court is pro se Plaintiff Issachar Meafou's First Amended Prisoner Civil Rights Complaint (FAC) brought pursuant to 42 U.S.C. § 1983.[1] ECF No. 11. In the FAC, Meafou alleges that ten prison officials violated his rights by using excessive force (Count I), threatening his safety (Count II), and denying him adequate medical care (Count III) during his pretrial detention at the Oahu Community Correctional Center (OCCC).[2] *Id.* at PageID.7-13. After

---

[1]Meafou remains a pretrial detainee at Oahu Community Correctional Center. *See* ECF No. 11 at PageID.59; VINE, https://vinelink.vineapps.com/search/HI/Person (select "ID Number"; enter "A6005734"; and select "Search") (last visited Feb. 27, 2026).

[2]Meafou names as defendants: (1) Adult Corrections Officer (ACO) Levi Kaakau; (2) ACO Jeff Tai; (3) ACO Kainoa Mallot; (4) ACO John Doe; (5) ACO Pili; (6) Sergeant (Sgt.) Larry Domingo; (7) Deputy Warden Lance Rabacal; (8) Nurse Matt Huber; (9) Case Manager Chad Kahale; and (10) ACO Villanueva. ECF No. 11 at PageID.53-56. Meafou names all the prison officials in their individual capacities only. *Id.*

conducting the screening required by 28 U.S.C. § 1915A, the Court DISMISSES the FAC with leave to amend. If Meafou wants to proceed, he must file an amended pleading that cures the noted deficiencies in his claims on or before **March 31, 2026**. Alternatively, instead of filing an amended pleading, Meafou may inform the Court in writing on or before **March 31, 2026** that he would like to voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a "strike" under 28 U.S.C. § 1915(g).[3]

## I.    BACKGROUND[4]

While Meafou was a pretrial detainee at OCCC, ACO Kaakau moved an inmate named Jordan Aukai into his cell. ECF No. 11 at PageID.60. Aukai is a known member of a security threat group (STG)[5]. *Id.*

On May 21, 2025, ACO Villanueva allowed an unnamed "gang leader" from OCCC's administrative segregation unit to meet and speak with general population inmates during a lockdown. *Id.* At some point, the gang leader "put a hit" on Meafou. *Id.*

---

[3]In general, 28 U.S.C. § 1915(g) prohibits a prisoner from filing a civil action in forma pauperis if he or she has on three or more occasions brought an action in federal court that was dismissed as frivolous or malicious, or for failing to state a claim upon which relief may be granted.
[4]The FAC alleges the following facts, which the Court accepts as true for the purposes of screening. *See Nordstrom v. Ryan*, 762 F.3d 903, 906 (9th Cir. 2014).
[5]The term "STG" is used to designate some formal and informal prison groups—for example, prison gangs. *See DePaepe v. White*, 2020 WL 3472907, at *2 n.3 (D. Haw. June 24, 2020).

The next day, Aukai "attacked and stabbed" Meafou in a cell. *Id.* at PageID.59. ACO Kaakau approached the cell, but he did not intervene. *Id.* When a response team arrived, ACO John Doe held the cell door open a crack. *Id.* ACO Tai then pointed a can of mace at Meafou's face as Aukai was choking him. *Id.* Meafou dove out of the way, and ACO Tai handcuffed Meafou's hands behind his back. *Id.* The handcuffs were "twisted" before ACO Tai put them on Meafou resulting in restricted circulation. *Id.* at PageID.61. The handcuffs cut Meafou's wrist, and his palms went numb. *Id.* ACO Tai "shove[d]" Meafou toward the medical unit while yelling "sanction[ed] hit." *Id.* at PageID.59. ACO Kaakau, ACO Mallot, ACO John Doe, ACO Pili, Sgt. Domingo, and Deputy Warden Rabacal all stood by and watched while Meafou left the housing unit. *Id.*

Meafou's resulting injuries included puncture wounds near his left temple and between his eyes, blurry vision, and a bruised shin. *Id.* Upon arriving at the medical unit, Meafou asked to be taken to the hospital for stitches. *Id.* at PageID.61. Nurse Huber rinsed the wounds on Meafou's face with water and said that Meafou had "just a cut." *Id.* According to Meafou, ACO Tai prevented Nurse Huber from thoroughly examining his wounds. *Id.* Meafou was taken out of the medical unit, while still in handcuffs, and Nurse Huber did not tend to the wounds on Meafou's palms or his "busted finger." *Id.* Meafou was in pain for three days, and his finger remains "busted" and "deformed." *Id.*

The day after the incident, Meafou spoke with Case Manager Kahale. *Id.* at PageID.60. Kahale told Meafou that the prior day's events were "a green light" related to "ratting" and "game room robberies." *Id.* Meafou told Kahale that he wanted to be housed "somewhere safe and out of trouble," but Kahale discouraged him from seeking protective custody. *Id.* Kahale assigned Meafou to housing module 2, where Meafou experienced stress, humiliation, and mistreatment by ACO Tai and other unidentified staff members. *Id.*

Meafou commenced this lawsuit by signing his original Complaint that the Court received on October 27, 2025. *Id.* Meafou paid the required fees on December 15, 2025, ECF No. 6, and the Court dismissed the original Complaint on December 23, 2025, ECF No. 7.

The Court received the FAC on January 20, 2026, ECF No. 11, and Meafou filed a letter clarifying his claims on February 17, 2026, ECF No. 13. In the FAC, Meafou alleges that Defendants violated his rights by using excessive force (Count I), threatening his safety (Count II), and denying him adequate medical care (Count III). ECF No. 11 at PageID.7-13. Meafou seeks $925,000 in damages. *Id.* at PageID.62.

## II.  STATUTORY SCREENING

The Court is required to screen all prisoner pleadings against government officials pursuant to 28 U.S.C. § 1915A(a).  *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed.  *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. § 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6).  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d

at 1130. When a claim cannot be saved by amendment, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

### III.   DISCUSSION

**A.   Legal Framework for Claims under 42 U.S.C. § 1983**

"Section 1983 provides a cause of action against '[e]very person who, under color of' law deprives another of 'rights, privileges, or immunities secured by the Constitution.'" *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (quoting 42 U.S.C. § 1983) (alteration in original). To state a claim under 42 U.S.C. §1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

**B.   Excessive Force**

Meafou alleges in Count I that ACO Tai used excessive force on May 22, 2025, and that ACO Kaakau, ACO Mallot, ACO John Doe, ACO Pili, Sgt. Domingo, and Deputy Warden Rabacal saw ACO Tai shove him while he was handcuffed and did nothing about it. ECF No. 11 at PageID.59.

The Supreme Court has stated that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." *Kingsley v.*

6

*Hendrickson*, 576 U.S. 389, 397 (2015).  Under this standard, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97.  Objective reasonableness turns on the facts and circumstances of each case. *Id.* at 397.  Relevant considerations include, among other things, the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, any effort by the officer to temper or limit the amount of force, the severity of the security problem at issue, the threat reasonably perceived by the officer, and whether the plaintiff was actively resisting. *Id.*

Here, Meafou alleges that ACO Tai pointed a can of mace at his face, put him in handcuffs, and "shove[d]" him toward the medical unit.  ECF No. 11 at PageID.59.  That is not enough to state an *excessive* force claim.

Regarding the mace, Meafou does not say whether ACO Tai gave any verbal instructions or warnings, or, if so, whether he complied.  Meafou also does not allege whether the mace was deployed, or, if it was, how many times or for how long.  Nor does Meafou allege whether ACO Tai only aimed and/or deployed the mace at him, whether Aukai was also targeted, or how the two men reacted or were impacted.  In other words, even the mere deployment of mace does not necessarily amount to excessive force. *See Brown v. Baudino*, 840 F. App'x 263, 263 (9th Cir. 2021) ("The brief use of pepper spray against [pretrial detainee] followed by

7

immediate medical attention was objectively reasonable under the circumstances.").

Regarding the handcuffs, although Meafou alleges that the handcuffs were twisted, restricted circulation, and cut his wrist, he does not allege that ACO Tai was aware of these facts. For example, Meafou does not allege that he was in visible pain, that he ever complained to ACO Tai about the handcuffs or his sensitivity, or that he asked ACO Tai to loosen the restraints. *Cf. Shaw v. City of Redondo Beach*, 2005 WL 6117549, at *8 (C.D. Cal. Aug. 23, 2005) ("In those tight handcuffing cases in which courts have found excessive force, the arrestee was either in visible pain, complained of pain, alerted the officer to pre-existing injuries, sustained more severe injuries, was in handcuffs for a longer period of time, asked to have the handcuffs loosened or released, and/or alleged other forms of abusive conduct in conjunction with the tight handcuffing.").

To the extent Meafou alleges that ACO Tai "shove[d]" him toward the medical unit, he does not describe where on his body he was shoved, how many times he was shoved, the strength of any shove, any resulting injury, or how he responded. *Cf. Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action."). Unless and until Meafou states a plausible excessive force claim against ACO Tai, his claims against ACO Kaakau, ACO Mallot, ACO John Doe, ACO Pili, Sgt.

8

Domingo, and Deputy Warden Rabacal grounded on their alleged failure to act cannot proceed. *See Claiborne v. Blauser*, No. 2:10-cv-2427 LKK EFB P, 2013 WL 1384995, at *5 (E.D. Cal. Apr. 4, 2013) ("A defendant is liable for failing to intervene only where there has been an underlying constitutional violation warranting intervention."), *report and recommendation adopted*, 2013 WL 1963515 (E.D. Cal. May 10, 2013). Meafou's excessive force claims in Count I are therefore DISMISSED.

C.  **Threat to Safety**

Meafou alleges in Count II that ACO Kaakau, ACO Villanueva, Case Manager Kahale threatened his safety. ECF No. 11 at PageID.60.

To establish a threat-to-safety claim under the Fourteenth Amendment, the plaintiff must show that:

> (1) [t]he defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) [t]hose conditions put the plaintiff at substantial risk of suffering serious harm; (3) [t]he defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) [b]y not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (formatting and footnoted omitted).

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* (internal quotation marks, brackets, and citations omitted). A pretrial detainee who asserts a threat-to-safety claim must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

Meafou alleges that ACO Kaakau decided to house Aukai with him, and that Aukai later attacked him. Meafou has not alleged facts showing, however, that ACO Kaakau's housing decision placed him at substantial risk of harm and that a reasonable officer would have appreciated the risk. Nothing in the FAC suggests that Aukai was an inherent threat to Meafou. Meafou does not allege that Aukai attacked other cellmates, and, even if he had, Meafou alleges no facts suggesting that a reasonable officer would have appreciated that Aukai might also attack him.

To the extent Meafou alleges that ACO Villanueva allowed a "known gang leader" to converse with general population inmates during a lockdown, again, Meafou fails to allege facts demonstrating a substantial risk of harm that a reasonable officer would have appreciated. Although Meafou alleges that the gang leader "put a hit" on him, he does not allege any facts suggesting that a reasonable officer would have recognized the risk of this happening.

Finally, regarding Case Manager Kahale's decision to house Meafou in Module 2 after the incident, Meafou has not alleged facts showing that doing so created a substantial risk of serious harm. Meafou's vague references to "humiliation, verbal abuse, and mistreatment" are not enough. Nothing in the FAC suggests that Meafou's safety was threatened in Module 2. Meafou's threat-to-safety claims in Count II are therefore DISMISSED.

### D.    Medical Care

Meafou alleges in Count III that Nurse Huber and ACO Tai denied him adequate medical care immediately after the incident on May 22, 2025. ECF No. 11 at PageID.61.

Medical care claims brought by pretrial detainees also arise under the Fourteenth Amendment's Due Process Clause. *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018). "[C]laims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants . . . must be evaluated under an objective deliberate indifference standard." *Id.* at 1124-25.

A pretrial detainee asserting a failure-to-provide-adequate-medical-care claim must show that: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not

take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Id.* at 1125.

Regarding the third element, "the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[ ] on the facts and circumstances of each particular case." *Id.* (quotation marks and citation omitted) (alteration in original). The "mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment"; the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (internal quotation marks and citation omitted).

After Meafou arrived at the medical unit, Nurse Huber rinsed the wounds on his face with water and said that they were "just . . . cut[s]." ECF No. 11 at PageID.61. While Meafou may think that Nurse Huber also should have sent him to the hospital, he has not alleged facts showing that not doing so was medically unacceptable under the circumstances. *See Breaux v. Med. Staff*, 2024 WL 5706269, at *3 (E.D. Cal. Jan. 12, 2024). To the extent Meafou states that Nurse Huber also "did not tend to the wounds on [his] palms or [his] busted finger," *id.*,

12

Meafou does not allege that he alerted Nurse Huber to these injuries, nor does he allege that Huber ignoring these injuries placed him at substantial risk of serious harm.

Meafou also alleges that ACO Tai "prevented" Nurse Huber from thoroughly checking his wounds. ECF No. 11 at PageID.61. While interference with medical care can amount to deliberate indifference, an inmate must also show that the interference resulted in further injury. *See Dampier v. King Cnty. Jail*, 2022 WL 17655879, at *2 (W.D. Wash. Nov. 17, 2022), *report and recommendation adopted*, No. C22-1401-JCC-SKV, 2022 WL 17601166 (W.D. Wash. Dec. 12, 2022). Here, Meafou does not specify how ACO Tai interfered with his medical care, other than by saying to Meafou while laughing, "[you] no need nothing, it's just a scratch, don't worry you still handsome." ECF No. 11 at PageID.61. Nothing suggests that ACO Tai's statement prevented Nurse Huber from providing care. In addition, Meafou does not allege that ACO Tai's statement resulted in further injury. Meafou's medical care claims are therefore DISMISSED.

## IV. <u>LEAVE TO AMEND</u>

The FAC, ECF No. 11, is DISMISSED with leave to amend. Meafou must file any amended pleading on or before March 31, 2026. Meafou may not expand his claims beyond those already alleged herein or add new claims, such as those against individual corrections officers, without explaining how any new claims relate to the claims alleged in the FAC. Claims that do not properly relate to those in the FAC are subject to dismissal.

Meafou must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii. Local Rule 10.4 requires that an amended complaint be complete in itself, without reference to any prior pleading. An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the Court's prisoner civil rights form. *See* LR99.2(a). An amended complaint will supersede the preceding complaint. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).

## V.    28 U.S.C. § 1915(g)

If Meafou fails to file an amended complaint or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C. §1915(g). Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.    CONCLUSION

(1) The Court DISMISSES the FAC, ECF No. 11, with leave to amend.

(2) If Meafou wants to proceed with this action, he must file an amended pleading that cures the noted deficiencies in his claims on or before March 31, 2026.

(3) ALTERNATIVELY, instead of filing an amended pleading, Meafou may inform the Court in writing on or before March 31, 2026 that he would like to voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a "strike" under 28 U.S.C. § 1915(g).

(4) Failure to comply with these deadlines may result in AUTOMATIC DISMISSAL of this suit without further notice, and Meafou may incur a strike under 28 U.S.C. § 1915(g).

(5) The Clerk is DIRECTED to send Meafou a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED: March 3, 2026 at Honolulu, Hawaiʻi.

Derrick K. Watson
Chief United States District Judge

*Issachar Timothy Meafou v. State of Hawaii, et al.*; Civil No. 25-00460 DKW-WRP; **ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**