IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ISSACHAR TIMOTHY MEAFOU, #A6005734,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF HAWAII, *et al.*,<br><br>Defendants. | CIVIL NO. 25-00460 DKW-WRP<br><br>ORDER DISMISSING SECOND AMENDED COMPLAINT AND ACTION |

Before the Court is pro se Plaintiff Issachar Meafou's Second Amended Prisoner Civil Rights Complaint (SAC) brought pursuant to 42 U.S.C. § 1983. ECF No. 19.  In the SAC, Meafou alleges that nine prison officials violated his rights by using excessive force (Count I), threatening his safety (Count II), and denying him adequate medical care (Count III) during his pretrial detention at the Oahu Community Correctional Center (OCCC).[1]  *Id.* at PageID.96–101.  After conducting the screening required by 28 U.S.C. § 1915A, the Court DISMISSES the SAC.  Because the SAC suffers from the same flaws that the Court identified

---

[1]Meafou names as defendants: (1) Adult Corrections Officer (ACO) Jeff Tai; (2) ACO Kainoa Mallot; (3) Sergeant (Sgt.) Levi Kaakau; (4) ACO John Doe; (5) ACO Villanueva; (6) ACO Darryl Pili; (7) ACO Larry Domingo; (8) Deputy Warden Lance Rabacal; and (9) Nurse Matthew Huber.  ECF No. 19 at PageID.89–93.  Meafou names all the prison officials in their individual capacities only.  *Id.*

and instructed Meafou to correct in dismissing his two earlier pleadings, the Court finds that granting further leave to amend would be futile and is not warranted. This dismissal is, therefore, with prejudice.

## I.    BACKGROUND

While Meafou was a pretrial detainee at OCCC, Sgt. Kaakau moved a "known violent [security threat group] . . . member" into his cell.  ECF No. 19 at PageID.96.  At some point, ACO Villanueva allowed "inmate[] communication" that resulted in a "planned attack."  *Id.*

On May 22, 2025, Meafou was stabbed.  *Id.*  According to Meafou, Sgt. Kaakau, ACO Tai, ACO Mallot, and ACO Doe "observed" the attack, but they did not intervene.  *Id.*  During the incident, Meafou sustained stab wounds to his face, head, and hands.  *Id.*  He also lost consciousness and experienced head trauma, headaches, neck pain, and permanent damage to a finger.  *Id.*

ACO Tai responded, forced Meafou to the ground, and handcuffed him.  *Id.* at PageID.98.  According to Meafou, the handcuffs were "excessively tight."  *Id.* ACO Tai proceeded to shove and pull Meafou.  *Id.*  At some point, Meafou reported being in pain, but ACO Tai ignored him.  *Id.*  While this was happening, ACO Pili, ACO Domingo, and Deputy Warden Rabacal were present, but they did not intervene.  *Id.*  During this encounter, Meafou sustained injuries to his wrist, and he aggravated a shoulder injury.  *Id.*

2

It appears that Meafou was taken to OCCC's medical unit, where he was seen by Nurse Huber.  *Id.* at PageID.100.  According to Meafou, Nurse Huber "failed to properly examine or treat" him, and ACO Tai "interfered with [his] medical treatment."  *Id.*  Meafou was sent to the hospital on May 24, 2025, two days after the incident.  *Id.*

Meafou commenced this lawsuit by signing his original Complaint that the Court received on October 27, 2025.  *Id.*  The Court dismissed the original Complaint on December 23, 2025, ECF No. 7.  In doing so, the Court provided the applicable legal standards for Meafou's claims as guidance for any amended pleading.  *Id.* at PageID.34–42.

The Court received the First Amended Complaint (FAC) on January 20, 2026, ECF No. 11, and Meafou filed a letter clarifying his claims on February 17, 2026, ECF No. 13.  The Court dismissed the FAC on March 3, 2026.  ECF No. 15. The Court explained that Meafou failed to allege sufficient facts to state an excessive force claim against ACO Tai and also failed to state a claim against the other officers in the area based on an alleged failure to intervene.  *Id.* at PageID.76–79.  The Court also concluded that Meafou failed to state a threat-to-safety claim against Sgt. Kaakau and ACO Villanueva.  *Id.* at PageID.79–81. Finally, the Court dismissed Meafou's medical care claims against Nurse Huber

and ACO Tai. *Id.* at PageID.81–83. The Court nonetheless gave Meafou another opportunity to cure the deficiencies in his claims. *Id.* at PageID.84.

The Court received the SAC on April 17, 2026. ECF No. 19. In the SAC, Meafou again alleges that Defendants violated his rights by threatening his safety (Count I), using excessive force (Count II), and denying him adequate medical care (Count III). *Id.* at PageID.96–101. Meafou seeks unspecified damages. *Id.* at PageID.62.

## II.    STATUTORY SCREENING

The Court is required to screen all prisoner pleadings against government officials pursuant to 28 U.S.C. § 1915A(a). *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. § 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the

facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a claim cannot be saved by amendment, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

### III.    DISCUSSION

### A.    Legal Framework for Claims under 42 U.S.C. § 1983

"Section 1983 provides a cause of action against '[e]very person who, under color of' law deprives another of 'rights, privileges, or immunities secured by the Constitution.'" *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (quoting 42 U.S.C. § 1983) (alteration in original). To state a claim under 42 U.S.C. §1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

**B.    Threat to Safety**

Meafou alleges in Count I that Sgt. Kaakau, ACO Villanueva, ACO Tai, ACO Mallot, and ACO Doe threatened his safety.  ECF No. 19 at PageID.96–97.

To establish a threat-to-safety claim under the Fourteenth Amendment, the plaintiff must show that:

> (1) [t]he defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) [t]hose conditions put the plaintiff at substantial risk of suffering serious harm; (3) [t]he defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) [b]y not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (formatting and footnoted omitted).

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case."  *Id.* (internal quotation marks, brackets, and citations omitted).  A pretrial detainee who asserts a threat-to-safety claim must "prove more than negligence but less than subjective intent—something akin to reckless disregard."  *Id.*

Meafou alleges that Kaakau decided to house him with a "known violent STG member."  ECF No. 19 at PageID.96.  Again, however, Meafou has not

alleged facts showing that ACO Kaakau's housing decision placed him at substantial risk of harm and that a reasonable officer would have appreciated the risk.  Like Meafou's earlier pleadings, nothing in the SAC suggests that the other inmate was an inherent threat to Meafou.  Although Meafou describes the other inmate as "violent," he does not allege that the other inmate had a history of attacking his cellmates, and, even if he did, Meafou alleges no facts suggesting that a reasonable officer would have appreciated that the other inmate might also attack Meafou.

To the extent Meafou alleges that ACO Villanueva "allowed inmate[] communication that created a planned attack," *id.* at PageID.96, again, Meafou fails to allege facts demonstrating a substantial risk of harm that a reasonable officer would have appreciated.  Meafou does not say who was allowed to communicate or how a reasonable officer would have recognized that such communication would result in an attack on Meafou.

Finally, regarding Meafou's claim that Sgt. Kaakau, ACO Tai, ACO Mallot and ACO Doe threatened his safety by observing the attack and failing to respond, *id.*, he fails to say how any of these officers acted with anything close to reckless disregard.  Indeed, later in the SAC, Meafou acknowledges that ACO Tai responded to the attack, albeit using allegedly excessive force.  *Id.* at PageID.98. Nothing suggests that ACO Tai's response time was anything close to reckless, nor

7

has Meafou alleged facts demonstrating that any of the other officers violated his rights, given ACO Tai's response.  Meafou's threat-to-safety claims in Count I are DISMISSED.

## C.    Excessive Force

Meafou alleges in Count II that ACO Tai used excessive force while responding to the attack, and that ACO Pili, ACO Domingo, Deputy Warden Rabacal were "present during the incident [and] . . . failed to respond." *Id.* at PageID.98.

The Supreme Court has stated that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).  Under this standard, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97.  Objective reasonableness turns on the facts and circumstances of each case. *Id.* at 397.  Relevant considerations include, among other things, the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, any effort by the officer to temper or limit the amount of force, the severity of the security problem at issue, the threat reasonably perceived by the officer, and whether the plaintiff was actively resisting. *Id.*

8

Here, Meafou alleges that ACO Tai forced him to the ground, put him in "excessively tight handcuffs," and shoved and pulled him.  ECF No. 19 at PageID.98.  Again, this is not enough to state an excessive force claim.

To the extent Meafou alleges that ACO Tai forced him to the ground, nothing suggests that ACO Tai used excessive force in doing so.  Meafou does not say how ACO Tai forced him to the ground, nor does Meafou allege that he suffered any injuries because of how ACO Tai did so.

Regarding the handcuffs, although Meafou alleges that the handcuffs were "excessively tight," he still has not alleged that ACO Tai was or should have been aware of this fact.  For example, Meafou does not allege that he was in visible pain, that he ever specifically complained to ACO Tai about the handcuffs, that he had and that ACO Tai was aware of a medical issue that made Meafou more susceptible to injury from handcuffs, or that he asked ACO Tai to loosen the restraints.  *Cf. Shaw v. City of Redondo Beach*, No. 05-0481, 2005 WL 6117549, at *8 (C.D. Cal. Aug. 23, 2005) ("In those tight handcuffing cases in which courts have found excessive force, the arrestee was either in visible pain, complained of pain, alerted the officer to pre-existing injuries, sustained more severe injuries, was in handcuffs for a longer period of time, asked to have the handcuffs loosened or released, and/or alleged other forms of abusive conduct in conjunction with the tight handcuffing.").

To the extent Meafou alleges that ACO Tai shoved and pulled him, he again does not describe where on his body he was shoved or pulled, how many times he was shoved or pulled, the strength of any such shoves or pulls, any resulting injury, or how he responded. *Cf. Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action.").

Finally, because Meafou fails to state a plausible excessive force claim against ACO Tai, his claims against ACO Pili, ACO Domingo, and Deputy Warden Rabacal grounded on their alleged failure to intervene also cannot proceed. *See Claiborne v. Blauser*, 2013 WL 1384995, at *5 (E.D. Cal. Apr. 4, 2013) ("A defendant is liable for failing to intervene only where there has been an underlying constitutional violation warranting intervention."), *report and recommendation adopted*, 2013 WL 1963515 (E.D. Cal. May 10, 2013). Meafou's excessive force claims in Count II are therefore DISMISSED.

**D.    Medical Care**

Meafou alleges in Count III that Nurse Huber and ACO Tai denied him adequate medical care immediately after the incident on May 22, 2025. ECF No. 19 at PageID.100–01.

Medical care claims brought by pretrial detainees also arise under the Fourteenth Amendment's Due Process Clause. *Gordon v. County of Orange*, 888

F.3d 1118, 1124 (9th Cir. 2018).  "[C]laims for violations of the right to adequate

medical care brought by pretrial detainees against individual defendants . . . must

be evaluated under an objective deliberate indifference standard."  *Id.* at 1124–25.

A pretrial detainee asserting a failure-to-provide-adequate-medical-care

claim must show that: (1) the defendant made an intentional decision with respect

to the conditions under which the plaintiff was confined; (2) those conditions put

the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not

take reasonable available measures to abate that risk, even though a reasonable

official in the circumstances would have appreciated the high degree of risk

involved—making the consequences of the defendant's conduct obvious; and (4)

by not taking such measures, the defendant caused the plaintiff's injuries.  *Id.* at

1125.

Regarding the third element, "the defendant's conduct must be objectively

unreasonable, a test that will necessarily turn[ ] on the facts and circumstances of

each particular case."  *Id.* (quotation marks and citation omitted) (alteration in

original).  The "mere lack of due care by a state official does not deprive an

individual of life, liberty, or property under the Fourteenth Amendment"; the

plaintiff must "prove more than negligence but less than subjective intent—

something akin to reckless disregard."  *Id.* (internal quotation marks and citation

omitted).

Meafou alleges that Nurse Huber "failed to properly examine or treat" him. ECF No. 19 at PageID.100.  This vague and conclusory allegation is insufficient to state a claim.  Although Meafou may think that Nurse Huber should have done something differently, he still has not alleged facts showing that Nurse Huber acted in a medically unacceptable manner under the circumstances.  *See Breaux v. Med. Staff*, 2024 WL 5706269, at *3 (E.D. Cal. Jan. 12, 2024).

Meafou also alleges that ACO Tai "interfered" with his treatment.  ECF No. 19 at PageID.100.  While interference with medical care can amount to deliberate indifference, an inmate must also show that the interference resulted in further injury.  *See Dampier v. King Cnty. Jail*, 2022 WL 17655879, at *2 (W.D. Wash. Nov. 17, 2022), *report and recommendation adopted*, 2022 WL 17601166 (W.D. Wash. Dec. 12, 2022).  Like his earlier pleadings, Meafou again does not specify how ACO Tai interfered with his medical care.  In addition, Meafou does not allege how ACO Tai's actions resulted in further injury.  Meafou's medical care claims are therefore DISMISSED.

## IV.   <u>NO LEAVE TO AMEND</u>

In general, "[u]nless it is absolutely clear that no amendment can cure the defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action."  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); *Amina v. WMC Fin. Co.*, 329 F.

Supp. 3d 1141 (D. Haw. 2018), *aff'd*, 812 F. App'x 509 (9th Cir. 2020).  After a district court has already granted a plaintiff leave to amend, however, its discretion in deciding whether to grant further leave to amend is "particularly broad." *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1143 (9th Cir. 2022); *see also Snyder v. Allison*, 2021 WL 3784256 (9th Cir. Aug. 26, 2021) (applying rule to pro se prisoner).

Here, in dismissing both the original Complaint and FAC, the Court identified numerous flaws in Meafou's claims and provided him with a thorough description of the relevant legal standards for his claims.  Rather than correcting the noted deficiencies in Meafou's claims, however, the SAC includes even less information than his previous two pleadings.  Given Meafou's inability to state a plausible claim against any Defendant—despite guidance from the Court as to how to do so—the Court finds that granting further leave to amend is not warranted. *See Martinez v. Villalon*, 809 F. App'x 426, 427 (9th Cir. 2020) ("The district court did not abuse its discretion in dismissing the claims in the [amended pleading] without leave to amend because [the plaintiff] failed to cure the complaint's deficiencies despite the district court's specific instructions about how to do so."). All of Meafou's claims against Defendants are DISMISSED without leave to amend.

## V.    28 U.S.C. § 1915(g)

Meafou is notified that this dismissal counts as a "strike" under 28 U.S.C. § 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.    CONCLUSION

(1) The SAC, ECF No. 19, is DISMISSED pursuant to 28 U.S.C. § 1915A(b).

(2) Because Meafou was unable to state a colorable claim for relief—despite explicit guidance from the Court on how to do so—the Court finds that granting further leave to amend is not warranted.  The SAC is therefore DISMISSED without leave to amend, and this dismissal constitutes a strike under 28 U.S.C. § 1915(g).

(3) The Court CERTIFIES that an appeal from this Order would be frivolous and, therefore, not taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).  *See Coppedge v. United States*, 369 U.S. 438, 445 (1962); *Gardner v. Pogue*, 558 F.2d

14

548, 550 (9th Cir.1977) (stating that indigent appellant is permitted to proceed IFP

on appeal only if appeal would not be frivolous).

(4) The Clerk is DIRECTED to enter judgment and close this case.

IT IS SO ORDERED.

DATED: April 29, 2026 at Honolulu, Hawaiʻi.



/s/ Derrick K. Watson
_____
Derrick K. Watson
Chief United States District Judge

*Issachar Timothy Meafou v. State of Hawaii, et al.*; Civil No. 25-00460
DKW-WRP; **ORDER DISMISSING SECOND AMENDED COMPLAINT
AND ACTION**